**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000120
23-JUN-2023
07:52 AM
Dkt. 89 SO**

NO. CAAP-19-0000120


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


ADAM L. JOSIAH, Claimant-Appellee/Appellee,
v.
TARGET CORPORATION, Employer-Appellee/Appellee,
and SEDGWICK CMS-HAWAII, Insurance Adjuster-Appellee/Appellee,
and SPECIAL COMPENSATION FUND, Appellant-Appellant


LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB 2017-211 (DCD NO. 2-09-10098))


<u>SUMMARY DISPOSITION ORDER</u>
(By:  Ginoza, Chief Judge, Hiraoka and Nakasone, JJ.)

This case arises from a workers' compensation claim asserted by Claimant-Appellee-Appellee Adam L. Josiah (**Claimant Josiah**) due to a work injury that occurred on September 10, 2009. The issue before us is whether the Labor and Industrial Relations Appeals Board (**LIRAB**) properly determined that Appellant-Appellant Special Compensation Fund (**SCF**) must pay a portion of Claimant Josiah's permanent partial disability (**PPD**) benefits under Hawaii Revised Statutes (**HRS**) § 386-33 (2015).[1]  SCF

---

[1]  HRS § 386-33 provides, in relevant part:

> (a) Where <u>prior to any injury an employee suffers from a **previous permanent partial disability** already existing prior to the injury for which compensation is claimed</u>, and the disability resulting from the injury combines with the previous disability, whether the previous permanent partial disability was incurred during past or present periods of
>
> (continued...)

contends it is not liable under HRS § 386-33, and that
Employer-Appellee-Appellee Target Corporation (**Employer Target**)
and Insurance Adjuster-Appellee Sedgwick CMS - Hawaii **(Insurer
Sedgwick**) must pay the full amount of the PPD benefits.[2]

SCF appeals from LIRAB's Decision and Order (**Decision
and Order**) filed on January 30, 2019, which affirmed a decision
by the Director of Labor and Industrial Relations (**Director**)
apportioning liability for Claimant Josiah's PPD benefits between
SCF and Employer Target/Insurer Sedgwick.

The key issue in this appeal is whether Claimant Josiah
suffered from a "previous permanent partial disability" before
the subject work accident in this case, such that HRS § 386-33
requires SCF to pay a portion of Claimant Josiah's PPD benefits.

As discussed below, the record does not contain
evidence that Claimant Josiah suffered from a "disability" prior

---

(...continued)
employment, to result in a greater permanent partial
disability or in permanent total disability or in death, then
weekly benefits shall be paid as follows:

> (1) In cases where the disability resulting from the
> injury combines with the previous disability to result
> in greater permanent partial disability the employer
> shall pay the employee compensation for the employee's
> actual permanent partial disability but for not more
> than one hundred four weeks; the balance if any of
> compensation payable to the employee for the employee's
> actual permanent partial disability shall thereafter be
> paid out of the special compensation fund . . . ;

> . . . .

> (b) Notwithstanding subsection (a), <u>where the director or the
> appellate board determines that the **previous permanent partial
> disability** amounted to less than that necessary to support an
> award of thirty-two weeks of compensation for permanent
> partial disability, there shall be no liability on the special
> compensation fund</u> and the employer shall pay the employee or
> the employee's dependents full compensation for the employee's
> permanent partial or total disability or death.

(Emphases added.)

    [2]  Claimant Josiah is not a party to the appeal, having been dismissed
from the case pursuant to a stipulation for dismissal filed in LIRAB on April
6, 2018.

to the subject work injury.  Accordingly, we reverse the Decision and Order.

### I. Brief Background

On September 10, 2009, Claimant Josiah sustained an injury to his left knee while working for Employer Target.  In a report dated May 27, 2011 (**2011 Report**), Employer Target's medical expert, Vern K. Sasaki, M.D. (**Dr. Sasaki**), issued his "diagnostic impression" based on his examination of Claimant Josiah and review of imaging studies, opining that Claimant Josiah suffered from an acute medial meniscal tear to the left knee and preexisting bilateral knee osteoarthritis.[3]  Dr. Sasaki determined that the osteoarthritis existed prior to the work injury and that it was probably aggravated by the injury.  Dr. Sasaki opined that Claimant Josiah had a 9% lower extremity (left knee) impairment, and that 30% of that impairment was attributed to the preexisting osteoarthritis.  This assessment was not sufficient to meet the threshold requirement for SCF liability.

In February 2012, Claimant Josiah, Employer Target, and Insurer Sedgwick entered into a Stipulation and Settlement Agreement and Order (**2012 Agreement**) stipulating, *inter alia*, that SCF did not have to pay Claimant Josiah any disability benefits.  The Director approved the 2012 Agreement.

On September 18, 2015, Dr. Sasaki produced another report, stating that Claimant Josiah's condition had "significantly deteriorated" since the 2011 Report.  Dr. Sasaki recommended that Claimant Josiah receive a total knee replacement.  Following the total knee replacement surgery in 2015, Dr. Sasaki produced a report dated August 9, 2016 (**2016 Report**) with an amended assessment that Claimant Josiah had a 50%

---

[3]  "Osteoarthritis occurs when the cartilage that cushions the ends of bones in your joints gradually deteriorates."  Osteoarthritis, Mayo Clinic (last visited June 19, 2023) https://www.mayoclinic.org/diseases-conditions/osteoarthritis/symptoms-causes/syc-20351925.

left knee impairment.  Dr. Sasaki attributed 30% of Claimant Josiah's impairment to the preexisting osteoarthritis.

After a hearing, the Director found that Claimant Josiah suffered 55% PPD of the left leg for the left knee.[4]  The Director ordered, *inter alia*, that SCF be joined for the work injury claim and that pursuant to HRS §§ 386-32(a) (2015) and 386-33, Employer Target and SCF had to pay their respective portion of Claimant Josiah's compensation for 55% PPD.

On September 15, 2017, SCF appealed the case to LIRAB on the issue of apportionment with Employer Target/Insurer Sedgwick.  LIRAB affirmed the Director's decision on January 30, 2019.  This timely appeal followed.

On appeal, SCF asserts that: LIRAB clearly erred in its findings of fact (**FOF**) 15 through 19; and LIRAB was incorrect in its conclusion of law (**COL**) 1, concluding that Claimant Josiah's PPD benefits should be apportioned between Employer Target/Insurer Sedgwick and SCF.

## II. Discussion

"Appellate review of a LIRAB decision is governed by the provisions of the Hawaiʻi Administrative Procedure Act [(**HAPA**)] relating to judicial review of agency action."  Ihara, 141 Hawaiʻi at 41, 404 P.3d at 307 (citing HRS § 91-14(g) (1993)) (additional citation omitted).[5]  "Findings of fact are reviewed

---

[4]  A PPD rating determined by the Director may differ from a physician's recommendation because it is "ultimately the director . . . or the [LIRAB], and not the physician, that decides the final PPD rating." Ihara v. State Dep't of Land & Nat. Res., 141 Hawaiʻi 36, 43, 404 P.3d 302, 309 (2017) (citation omitted).

[5]  HAPA provides, in relevant part:

> (g)  Upon review of the record, the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
> (1)  In violation of constitutional or statutory provisions;
> (2)  In excess of the statutory authority or
>                              (continued...)

under the clearly erroneous standard." <u>Pave v. Prod. Processing, Inc.</u>, 152 Hawaiʻi 164, 172, 524 P.3d 355, 363 (Ct. App. 2022), <u>as corrected</u> (May 23, 2023), <u>reconsideration denied</u>, No. CAAP-17-0000600, No. CAAP-17-0000925, 2023 WL 127865 (Haw. Ct. App. Jan. 9, 2023), <u>cert. denied</u>, 2023 WL 3533518 (Haw. May 18, 2023) (citing HRS § 91-14(g)(5)) (additional citations omitted). "A finding of fact is clearly erroneous when the record lacks substantial evidence to support the finding . . . ." <u>Id.</u> (citation omitted). "Conclusions of law are reviewed de novo under the right/wrong standard." <u>Id.</u> (citing HRS § 91-14(g)(1), (2), (4)) (additional citation omitted).

The FOFs and COL that SCF challenges state:

> 15. The Board finds that Dr. Sasaki's August 9, 2016 report is the initial rating report indicating evidence of preexisting disability for which the SCF could be liable.

> 16. There being no other medical opinion regarding apportionment between the work injury and <u>Claimant's pre-existing condition</u>, the Board credits Dr. Sasaki's 30% apportionment <u>to pre-existing conditions</u>.

> 17. 30% apportionment of 55% PPD of the leg is equal to 133.6126 weeks (55% permanent impairment x 288 weeks x $725 maximum weekly compensation rate x 30% apportionment = $34,452.00 ÷ $257.85 weekly benefit rate = 133.6126 weeks).

> 18. 55% PPD of the leg is equal to 445.3752 weeks (55% permanent impairment x 288 weeks x $725 maximum weekly compensation rate = $114,840.00 ÷ $257.85 weekly benefit rate = 445.3752 weeks).

> 19. The Board finds that <u>Employer has met its burden of providing, by a preponderance of the</u>

---

(...continued)
      jurisdiction of the agency;
(3)    Made upon unlawful procedure;
(4)    Affected by other error of law;
(5)    Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
(6)    Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

HRS § 91-14(g) (Supp. 2021).

<u>evidence, its entitlement to apportionment of PPD
benefits with the SCF</u>.[6]

. . . .

**CONCLUSIONS OF LAW**

1. The Board concludes that permanent
disability should be apportioned between Employer/
Insurance Carrier and the Special Compensation Fund.

(Emphases added.)

SCF challenges FOFs 15, 16, and 19 for erroneously
relying on the worsening of Claimant Josiah's condition after the
work accident, as set out in Dr. Sasaki's 2016 Report, which SCF
contends is not pertinent to whether Claimant Josiah had a
<u>preexisting disability</u>, *i.e.,* disability before the work
incident. SCF also challenges FOF 17 as erroneous for relying on
an improperly inflated disability rating to apportion liability
for Claimant Josiah's PPD award to SCF. Employer Target/Insurer
Sedgwick argue that Dr. Sasaki's 30% PPD apportionment in the
2016 Report was to Claimant Josiah's "pre-existing condition, not
to the worsening of his condition from the work injury."

HRS § 386-1 (2015) defines "disability" as "loss or
impairment of a physical or mental function." A "finding that a
claimant had a preexisting disability must be based upon some
evidence in the record showing that the claimant had an actual
loss or impairment of a physical or mental function before the
work accident." <u>Pave</u>, 152 Hawaiʻi at 176, 524 P.3d at 367; <u>see
also</u> <u>Agasiva v. Realty Laua, LLC</u>, No. CAAP-17-0000596, 2023 WL
2943018, at *6 (Haw. Ct. App. Apr. 14, 2023) (citing <u>Pave</u>, 152
Hawaiʻi at 169, 524 P.3d at 360; HRS § 386-1). Moreover,
"[t]here must . . . be substantial evidence in the record
supporting LIRAB's determination that SCF is obligated to pay PPD
benefits because of a preexisting disability capable of

---

[6] We view FOF 19 as a mixed finding of fact and conclusion of law,
which we review for clear error. <u>AIG Haw. Ins. Co. v. Est. of Caraang</u>, 74
Haw. 620, 629, 851 P.2d 321, 326 (1993) (citation omitted).

supporting at least 32 weeks of compensation."  <u>Pave</u>, 152 Hawaiʻi at 180, 524 P.3d at 371.

In <u>Pave</u>, a consolidated appeal, this court ruled that "LIRAB [had] incorrectly equated a preexisting 'condition' with a preexisting 'disability.'"  <u>Id.</u>  There, the issue in each appeal was whether there was evidence that the claimant's asymptomatic preexisting physical condition had caused any disability, *i.e.,* loss or impairment of a physical or mental function, before the work accident.  See <u>id.</u> at 169, 524 P.3d at 360.  This court reversed LIRAB's decision and orders in both appeals, concluding that:

> In each of these cases, there was no expert opinion or other evidence that the injured person's asymptomatic preexisting condition had caused any actual "disability" — that is, "loss or impairment of a physical or mental function" — before the person's work accident. Under those circumstances, it was error for LIRAB to apportion liability for the person's PPD award to SCF.

 <u>Id.</u> at 185, 524 P.3d at 376.

In this case, LIRAB incorrectly equated a preexisting "condition" and "factors" with a preexisting "disability."  LIRAB made the following unchallenged findings:

> 9. After the [2012 Agreement], Claimant's knee condition <u>worsened</u>, and he underwent a total knee replacement.
>
> 10. Because of the total knee replacement, Claimant's permanent impairment increased.
> . . . .
>
> 12. In his August 9, 2016 report, Dr. Sasaki apportioned 30% of Claimant's permanent impairment after the total knee replacement to <u>pre-existing factors</u>.
>
> 13. Dr. Sasaki also opined that Claimant's work injury resulted in <u>progressive posttraumatic arthritis and end-stage osteoarthritis</u>, that had <u>significantly deteriorated since his first report.</u>
>
> 14. [LIRAB] finds that Dr. Sasaki's ratings were consistent with the [American Medical Association] Guides to the Evaluation of Permanent Impairment, Fifth Edition. Accordingly, his ratings were, in part, <u>based upon the extent of Claimant's surgical treatment</u>.
> . . . .
>
> 20. There being no evidence to the contrary, [LIRAB] credits Dr. Sasaki's opinion and finds that  <u>Claimant's pre-existing condition further</u>

> deteriorated after his September 10, 2009 work injury, thus requiring a total knee replacement.

(Emphases added.)

Further, the 2016 Report's findings and recommendations are, in relevant part, as follows:

> Based on the history, physical examination, and review of medical records, there is evidence of bilateral knee arthritis. A bone study on 12/01/15 revealed degenerative disease in both knees. This is an indication of some underlying, pre-existing bilateral knee osteoarthritis. Therefore, apportionment would be indicated in this claim.
>
> In my best judgment, 70% of the current impairment can be attributed to the injury of record which permanently aggravated an intermittently symptomatic, preexisting, degenerative joint disease of the left knee, and 30% can be attributed to preexisting osteoarthritic changes. My rationale for this apportionment is that the claimant, based on the available medical records of Dr. Lawler, his primary care physician, **did not complain of left knee pain between 2007 and the time of the current injury**.
>
> There was a recorded history of left knee pain in the past; however, medical records prior to 2007 were not available for review.

(Emphases added) (other emphasis omitted).

Dr. Sasaki opined that Claimant Josiah's preexisting osteoarthritis deteriorated after the work accident, thus requiring a total knee replacement.  However, Dr. Sasaki's 2016 Report did not analyze whether the preexisting condition had caused a preexisting disability, *i.e.,* loss or impairment of Claimant Josiah's physical function, prior to the work injury. Instead, LIRAB found that Dr. Sasaki's ratings were based, at least in part, on the extent of Claimant Josiah's impairment following surgical treatment after the work injury.  Dr. Sasaki noted the records indicated no complaint of left knee pain between 2007 and the work injury in September 2009.  There were no other medical records available for review.  Additionally, Claimant Josiah denied any prior knee injuries.[7]  The record here

---

[7]  The 2016 Report noted that Claimant Josiah's pertinent history was unchanged.  Thus, the 2016 Report relates back to the "Pertinent Past History"
(continued...)

does not contain any evidence that Claimant Josiah had a preexisting disability capable of supporting at least 32 weeks of compensation.  Thus, FOFs 15, 16 and 19 were clearly erroneous and COL 1 was wrong.

SCF also challenges FOF 15 as erroneous for ignoring the 2011 report.  SCF argues that the clear language and purpose of the thirty-two week threshold in HRS § 386-33 is a one-time determination that reduces litigation as intended by the Legislature, which Dr. Sasaki made in the 2011 Report.[8]  We need not address this issue because none of Dr. Sasaki's reports render opinions that Claimant Josiah had a preexisting "disability."  Given this record, there is no evidence that the requirements under HRS § 386-33 were met to trigger SCF's liability to pay a portion of the PPD benefits.

We conclude that: FOF 15 was clearly erroneous in finding that the 2016 Report indicated evidence of "preexisting disability for which the SCF could be liable[;]" FOFs 16 through 19 are clearly erroneous in relying on Dr. Sasaki's 2016 Report and determining that Employer Target/Insurer Sedgwick established an entitlement to apportion PPD benefits with SCF; and COL 1 is wrong that PPD benefits should be apportioned between Employer Target/Insurer Sedgwick and SCF.

---

[7](...continued)
section in the 2011 Report, in which Claimant Josiah denied any prior knee injuries.

[8]  SCF also argues that the 2012 Agreement was a final judgment under HRS § 386-87(a) (2015), which provides that a "decision of the director shall be final and conclusive between the parties, except as provided in section 386-89, unless within twenty days . . . either party appeals therefrom to the appellate board[.]"  Although no appeal was taken from the 2012 Agreement, HRS § 386-87(a) is subject to HRS § 386-89 (2015), which permits reopening of cases under specified circumstances.  Given our determination that the record lacks evidence of a preexisting disability, we need not address SCF's argument regarding the 2012 Agreement.

### III. Conclusion

For the foregoing reasons, we reverse the January 30, 2019 Decision and Order filed by the Labor and Industrial Relations Appeals Board.

DATED:  Honolulu, Hawaiʻi, June 23, 2023.

On the briefs:

Li-Ann Yamashiro,
Carissa A. Goto,
(Staci I. Teruya on the
briefs),
Deputy Attorneys General,
for Appellant-Appellant

Leighton K. Oshima,
Darlene Y.F. Itomura,
for Employer-Appellee/Appellee
and Insurance Adjuster-
Appellee/Appellee

/s/ Lisa M. Ginoza
Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Karen T. Nakasone
Associate Judge

10